IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

NANCY PAXTON, on behalf )
of N.D.P, a minor, )
 )
        Plaintiff, )
 )
 ) Case No. CIV-19-299-JFH-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
        Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Nancy Paxton ("Plaintiff"), on behalf of her minor child, N.D.P. ("Claimant"), requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability for a child under the age of eighteen according to the Social Security Act is defined as "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to

last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. Social Security Regulations implement a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments. If the claimant is engaged in substantial gainful activity or has no severe impairment or combination of impairments, he is considered not disabled. Otherwise, the claimant's impairment is measured against the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P., App.1. A claimant suffering from an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a listed impairment, and that meets the duration requirement, is considered disabled. *See* 20 C.F.R. § 416.924(a)-(d)(2).

discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was eight (8) years old at the time of the ALJ's decision. At the time of the administrative hearing, he was being homeschooled and doing work at a third-grade level. Claimant is alleged to have become disabled due to mild cerebral palsy on the left side, epileptic seizures, asthma, attention deficit disorder/attention deficit hyperactivity disorder (ADD/ADHD), vitamin D deficiency, and chronic constipation.

## Procedural History

On April 25, 2017, Claimant, through Plaintiff, protectively applied for Supplemental Security Income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. The application was denied initially and upon reconsideration. On September 24, 2018, ALJ Michael Mannes conducted an administrative hearing in McAlester, Oklahoma, at which Plaintiff and Claimant were present and testified. On November 16, 2018, the ALJ entered an unfavorable decision. A review by the Appeals Council was requested, and on

July 3, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step three of the sequential evaluation. He determined that while Claimant suffered from severe impairments, Claimant's condition did not meet a listing, and he had not been under a disability during the relevant period.

### Errors Alleged for Review

Plaintiff asserts the ALJ committed error by (1) relying on outdated opinions of state agency medical consultants while rejecting the opinion of a treating occupational therapist and failing to develop the record, and (2) ignoring evidence supportive of functional equivalence and failing to provide any evidence or analysis to support a finding of non-disability.

### Step Three Analysis

In his decision, the ALJ determined Claimant suffered from severe impairments of cerebral palsy, epilepsy, and constipation. (Tr. 15). He determined Claimant: (1) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and (2) did not have an impairment or combination of impairments that functionally equaled the severity of the listings. (Tr. 15-27). The ALJ analyzed the six domains of functioning based upon Claimant's severe

4

impairments. He concluded Claimant had less than marked limitation in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. The ALJ found no limitation in Claimant's ability to care for himself, but found Claimant had a marked limitation in health and physical well-being. (Tr. 21-27).

Plaintiff contends the ALJ improperly relied upon the opinions of the state agency medical consultants, arguing their opinions were "outdated" and failed to consider the psychological evaluation of consulting psychologist Kathleen Ward, Ph.D., the opinion of Claimant's occupational therapist Layne Harell, and several medical records which post-dated their review of the record. Plaintiff maintains that by evaluating the opinions and additional records himself, the ALJ substituted his own "lay judgment" for that of the medical experts.

State agency consultants reviewed Claimant's medical records in September of 2017, determining his severe impairments did not medically or functionally, meet or equal, listing level impairments. They cited to specific evidence from the record, finding Claimant had no limitation in acquiring or using information and caring for himself and less than marked limitation in attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and health and physical well-being. (Tr. 75-84).

5

State agency consultants reviewed the record again on reconsideration in November and December of 2017. It was determined Claimant did not meet, equal, or functionally equal a listed impairment. Citing evidence in support of their findings for the domains of functioning, the state agency consultants concluded Claimant had no limitation in caring for himself, less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects, and marked limitation in health and physical well-being. (Tr. 85-97).

The ALJ specifically discussed the state agency consultants' opinions in the decision. He found the state agency consultants provided "detailed explanations" of the evidence supporting their findings, and their assessments were consistent with the evidence, including Claimant's history of cerebral palsy, epilepsy, history of left spastic hemiparesis and left facial droop, symptoms arising from ADD/ADHD, limitations interacting and relating with others, complaints of headaches and leg pain, history of constipation and use of medication, placement of IEP for developmental delay with suspected category of autism, other health impairments, and speech language impairment in the area of articulation, speech therapy to address articulation delay, and display of weakness in written expression and mathematics. (Tr. 20-21).

The ALJ reviewed the subsequent evidence, including the consulting examination of Dr. Ward and the opinion from occupational therapist Layne Harell. The ALJ discussed Dr. Ward's assessment of Claimant in March/April 2018, and her determination that Claimant had high functioning autism, wherein he was verbally strong but had trouble staying calm with a disrupted routine, but without intellectual or language impairment. Dr. Ward assessed Claimant with an ADHD combined presentation and speech sound disorder. She assessed his social skills as somewhat below chronological expectations, noted Claimant presented as fidgety and wiggly, but indicated he was cooperative, friendly, courteous, smiled, and made good eye contact. The ALJ further discussed Claimant's performance on the WISC-IV, administered by Dr. Ward, wherein Claimant's performance fell in average ranges, with the V/P split often seen with high functioning autism being apparent. (Tr. 19, 22, 689-694).

The ALJ also considered the opinion from Claimant's occupational therapist, Layne Harell. The medical source statement indicated Claimant's level of functioning was extreme in all the domains of functioning based upon low visual motor integration, below average fine motor skills, delayed self-care, and symptoms of attention difficulties, self-care skills, fine motor skills, fatigue, transitions, sensory processing, and routine changes. (Tr. 21, 739-42). The ALJ determined, however, that such extreme

7

findings were inconsistent with and unsupported by the evidence. He provided several examples of inconsistencies with the evidence in his discussion, relying on medical evidence, school records, and Claimant's testimony. He concluded the statements of functioning suggested by therapist Harell were less persuasive than those of the state agency consultants. (Tr. 21).

The ALJ further considered other medical evidence subsequent to the opinions of the state agency consultants. In his summary of the evidence when explaining why Claimant's impairments or combination of impairments did not functionally equal the listings, he considered Claimant's physical therapy records, speech therapy records, evidence of Claimant's leg pain, evidence of ADD/ADHD, reports of daily soiling 2-3 times a day, and school records. (Tr. 16-20).

Although not making "a definitive determination" on whether a state agency consultant's opinion was stale, the Tenth Circuit has noted that an "ALJ's reliance on [a] patently stale opinion" can be "troubling[.]" *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012). Here, however, there was no error in the ALJ's determination that the state agency consultants' opinions were consistent with the evidence. The ALJ properly considered the subsequent evidence that was not before the state agency consultants. *See Sexton v. Berryhill*, 2018 WL 1835494, at *7 (W.D. Okla., Feb. 23, 2018) (finding "the opinions of the agency

physicians are relevant to the period to which they apply, and Plaintiff does not identify any evidence of a subsequent deterioration in Plaintiff's condition that was not reviewed and considered by the ALJ."). By reviewing and considering such evidence, the ALJ did not substitute his judgment for that of the medical experts. *See, e.g., Neal v. Commissioner, SSA*, 782 Fed. Appx. 722, 724 (10th Cir. 2019) (finding the ALJ did not "interpret raw medical data" or "step into the shoes of a medical examiner[,]" when he "analyzed the various medical reports and found [an] assessment less persuasive than others.") (internal quotation marks omitted).

Moreover, there was no error by the ALJ for not seeking additional consultative examinations, testimony from a medical expert, or an updated state agency consultant review. The record contained sufficient information for the ALJ to determine whether Claimant was disabled, and Claimant's counsel did not request any additional development of the record by the ALJ. *See Cowan v. Astrue*, 552 F.3d 1182, 1187-88 (10th Cir. 2008) (noting ALJ's responsibility for development of the record and that the duty is satisfied when the record contains sufficient information to make a disability determination and there was no request by counsel for further development), quoting *Hawkins*, 113 F.3d at 1167-68 ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to

rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.") (citation omitted).

Plaintiff also argues the ALJ erred in finding Claimant's impairments or combination of impairments did not functionally equal a listing. Although she makes a cursory reference to error by the ALJ when assessing all the domains, she only specifically argues error in the following: (i) acquiring and using information; (ii) attending and completing tasks; and (iii) caring for oneself.

When determining if an impairment is functionally equivalent to a listing, the ALJ considers how a child functions within six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and, (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(iv). In order to find disability, the child must have an extreme limitation in at least one domain or a marked limitation in two domains. 20 C.F.R. § 416.926a(a).

In order to have a marked impairment in the acquiring and using information domain, the regulations state that the agency will consider how well a child acquires or learns information and how well she uses the information she has learned. 20 C.F.R. §

416.926a(g). In this area, substantial evidence supports the ALJ's conclusion that Claimant experienced less than a marked limitation in this area of functioning. The ALJ relied upon a speech language evaluation from August of 2017, noted Claimant's overall language skills were in the average range, discussed his performance on the WISC-IV, and school records showing he met the criteria for a developmental delay with suspected category of autism and speech language impairment in the area of articulation. (Tr. 22-23). In his summary of the evidence supporting his determination that Claimant did not have an impairment or combination of impairments functionally equaling the listings, the ALJ discussed evidence that Claimant did well at school with peers and learning, interacted age appropriately, had an age appropriate attention span and interaction, and was involved in extracurricular activities. (Tr. 18). He also discussed evidence from November of 2017, which showed Claimant had a moderate to severe articulation delay with 70% of his speech intelligible when context is unknown and 80% intelligible when context was known, with a good prognosis in speech therapy. (Tr. 18). He further referenced a June of 2018 report, noting Claimant's intelligibility in connected speech was 10%, but he also referenced findings that Claimant's expressive vocabulary skills were high average and that his basic concepts/language skills were within normal limits. (Tr. 18). The ALJ accounted for the evidence in the record regarding this domain.

11

A court cannot reweigh the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (noting a court cannot reweigh the evidence, as it reviews only the sufficiency of the evidence). There is no error with this domain.

The ALJ's determination that Claimant had a less than marked limitation in attending and completing tasks also is supported by substantial evidence. The regulations require an analysis of how well a child focuses and maintains her attention, and how well she begins, carries through, and finishes her activities, including the pace at which she performs activities and the ease with which she changes them. 20 C.F.R. § 416.926a(h). The ALJ noted Claimant's medication and behavioral therapy for ADD/ADHD, and findings that he had problems with concentration, staying on track, adjusting to new things, and defiance. He noted findings from Dr. Ward and his treatment for daily headaches. (Tr. 23). In his summary of the evidence, the ALJ also discussed that Claimant's medication and behavioral therapy for ADD/ADHD had been "relatively effective" in controlling his symptoms. Although records showed Claimant demonstrated impaired attention/concentration, the ALJ noted they also showed Claimant could identify and process calming and coping strategies as part of managing his reactions. (Tr. 19).

The domain of caring for yourself requires evaluation of how well a child maintains a healthy emotional and physical state, including how well she satisfies her physical and emotional wants

12

and needs in appropriate ways. 20 C.F.R. § 416.926a(k). In support of his finding that Claimant had no limitation in carrying for himself, the ALJ relied on his teacher's report that Claimant had none to slight problems in the domain, and he could follow three-step commands, use complex sentences, was toilet trained, dressed without supervision, named four colors, did well at school with peers and learning, liked to be with other children, shared, and was cooperative. (Tr. 26). In his summary of the evidence, the ALJ referenced an EEG in April of 2011 that showed six typical spells out of sleep, described as crying and movement, but referenced that the EEG was essentially normal. He further referenced EEGs in 2014, 2015, 2016, and 2017 that were all within normal limits. (Tr. 20). The ALJ also discussed evidence regarding Claimant's constipation, including soiling incidents. (Tr. 20). The medical record relied upon by the ALJ, which indicated Claimant was toilet trained, also referenced Claimant's problems with constipation and soiling incidents. (Tr. 20, 26, 429). The ALJ's conclusion is supported by substantial evidence.

After assessing all the domains of functioning, including those challenged herein by Plaintiff, the ALJ concluded that because Claimant did not have an impairment or combination of impairments that resulted in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning, Claimant did not have an impairment or combination of impairments

that functionally equaled the severity of the listings. (Tr. 16-27).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 27th day of January, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE